IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| BENJAMIN KARL SMITH,<br><br>Plaintiff,<br><br>vs.<br><br>WARDEN KIRKEGARD, SGT. POSTMA, OFFICER DAVID AUGUST (BOGUT), and CAPTAIN SCOTT CLARK,<br><br>Defendants. | CV 14–62–H–DLC–JTJ<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

This matter is before the Court on Defendants' Motions for Summary Judgment. (Docs. 35, 37, 39, 41.) For the reasons discussed, the motions should be granted with respect to Defendants Kirkegard and Clark and judgment entered in their favor and denied with respect to Defendants Postma and August.

## BACKGROUND[1]

At all times relevant to this litigation, Plaintiff Benjamin Smith was

---

[1] Consistent with summary judgment standards discussed below, the following facts are taken from the materials of record. The Court views the facts and inferences drawn from them in the light most favorable to Mr. Smith as the non-moving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 474 U.S. 574, 587-88 (1986); *Betz v. Trainer Worthham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

incarcerated at the Montana State Prison (MSP). (Compl., Doc. 2 at 3.) In 2014, the holy month of Ramadan started on June 28 and ended on July 28. (*Id.* at 6; Decl. David August, Doc. 43-4 at ¶ 3; Decl. Joshua Postma, Doc. 43-5 at ¶ 3.) Mr. Smith, who has been a practicing Muslim since 2002 (Pl's St. Disp. Facts, Doc. 51 at ¶ 1(A); Decl. Smith, Doc. 59-4 at ¶ 4), requested and received approval to receive special meals to facilitate his observance of Ramadan. (MSP Memo, Doc. 6-1 at 10.) Prior to the start of Ramadan, MSP Registered Dietician Ray Hunt notified staff via a written memorandum when Ramadan started, how to serve meals to Muslim inmates, which inmates were to receive meals, and when to serve the meals. (Decl. Ray Hunt, Doc. 43-1 at ¶¶ 4-5.) Although the memorandum said that MSP staff would heat the hot portions of the Ramadan meals (*id.* at ¶ 7), Mr. Smith heated his own meals until July 6 (Decl. Smith ¶ 5), and from July 7 until approximately July 24, MSP staff denied Mr. Smith hot meals. (Pl.'s Resp. Jt. SUF, Doc. 50 at ¶ 6(A).)

On July 7, Defendant David August, a Correctional Officer at MSP, was notified that a cell door was open in High Side Unit One, Lower A block, which housed Mr. Smith. (Decl. August ¶ 6.) After discovering that Mr. Smith's door was open and the light was on, Officer August's partner closed the door for security reasons. (*Id.* at ¶¶ 7-8.) Although the events that followed are disputed, it

appears that a discussion of some sort ensued between Mr. Smith and Officer August. Officer August contends that Mr. Smith immediately started yelling at him after his door was closed. (*Id*. at ¶ 10.) Although Mr. Smith asserts that he was merely trying to explain to the officers his observance of Ramadan, he admits an argument occurred after Officer August allegedly made offensive statements regarding race. (Pl.'s Resp. Jt. SUF ¶ 18(A); Decl. Smith ¶ 6.) Mr. Smith received a major disciplinary infraction, an eleven-dollar fine, and a verbal warning for his abusive language during these events. (MSP Disciplinary Hearing Decision (July 11, 2014), Doc. 6-1 at 2.)

Officer August denies making any offensive statements during his discussion with Mr. Smith. (Decl. August ¶ 20.) However, Mr. Smith and three other inmates stated that Officer August called Mr. Smith a "niggar" three times. (Decl. Smith ¶ 6; Decl. Jacob Banschbach, Doc. 59-2 at ¶ 7; Decl. Andrew Golie, Doc. 59-3 at ¶ 4; Decl. Robert Wild, Doc. 59-5 at ¶ 7.) Further, all four inmates assert that Officer August threatened Mr. Smith with a rule violation and stated that Mr. Smith could celebrate his "jigga boo holiday in the hole." (Decl. Banschbach ¶ 7; Decl. Golie ¶ 4; Decl. Smith ¶ 6; Decl. Wild ¶ 7.) It is disputed whether Mr. Smith ever asked Officer August to heat his Ramadan meal after this discussion. (Pl.'s Resp. to Jt. SUF ¶ 24(A); Decl. August ¶ 12; Decl. Banschbach ¶ 10; Decl.

3

Golie ¶ 7.) However, Mr. Smith contends that Officer August stated that "its [sic] not my job to heat your meals, if you want to eat, you can eat with everyone else." (Decl. Smith ¶ 6; Decl. Wild ¶ 9; Decl. Golie ¶ 9.)

The events of the following morning are likewise in dispute. At approximately 5:00 a.m., Officer August escorted inmate Robert Wild from High Side Unit One, Lower A Block, for diabetic call. (Decl. Smith ¶ 7; Decl. Wild ¶ 8.) Officer August claims that Mr. Smith was asleep in his cell at this time and continued to sleep through breakfast that morning. (Decl. August ¶¶ 17-18.) However, Mr. Smith contends that he was conducting his morning prayer (Decl. Smith ¶ 7) and heard Mr. Wild ask Officer August whether he was going to let Mr. Smith out to eat his morning meal before sunrise. (Decl. Wild ¶ 8.) Officer August responded that he "wasn't gonna let that niggar do anything." (*Id.*; Decl. Smith ¶ 7.)

Later that month, on July 25, Defendant Sgt. Joshua Postma searched one of Mr. Smith's Ramadan meals because it felt heavy. (Decl. Postma ¶¶ 7-8.) Sgt. Postma claimed that he always wore gloves while searching Mr. Smith's meals and that the searches were always conducted outside of Mr. Smith's presence. (*Id.* at ¶¶ 9-13.) However, Mr. Smith states that he witnessed Sgt. Postma search his meal without gloves. (Decl. Smith ¶ 11.) Mr. Smith refused to accept the meal and

requested another. (*Id.*) Sgt. Postma refused this request and told Mr. Smith that this would be the only meal he would receive. (*Id.*) Later that evening, another officer left Mr. Smith's Ramadan meal on top of the microwave in the day room. (*Id.*) Although Mr. Smith admits that Islamic law generally does not prohibit the searching of his meals, he contends that the search of his meal by a non-believer with unclean hands is prohibited. (Pl.'s Resp. to Jt. SUF ¶¶ 11(A), 43(A).)

After this incident, Defendants contend that Mr. Smith informed Sgt. Ron McDonald that he wanted to discontinue his Ramadan meals. (Decl. Ron McDonald, Doc. 43-6 at ¶ 3.) Mr. Smith claims he merely informed Sgt. McDonald of Sgt. Postma's gloveless search. (Pl.'s Resp. to Jt. SOF ¶¶ 11(A), 44(A).) Sgt. McDonald then notified MSP staff that Mr. Smith no longer wanted Ramadan meals and that he would be provided pork-free meals at regular meal times for the remainder of Ramadan. (Decl. McDonald ¶¶ 3-4.) Although Mr. Smith's Ramadan meals were discontinued, he received the appropriate number of pork-free meals during the month of Ramadan. (Pl.'s Resp. to Defs.' First Combined Disc. Request, Doc 43-3 at 2.) However, Mr. Smith claims that he was forced to save food from July 26 to July 28 so that he could continue his observance of Ramadan. (Pl.'s Resp. to Jt. SUF ¶ 46(A).)

Defendants highlight other behavior regarding Mr. Smith that they believe is

5

relevant, including that on one occasion, almost a year later, Mr. Smith was observed eating a bacon cheeseburger. (Decl. Troy Wohlman, Doc. 43-9 at ¶ 3.) Mr. Smith, however, claims that he removed the bacon before eating the cheeseburger. (Pl.'s Resp. to Jt. SUF ¶ 11(A).) Defendants also point to several disciplinary records, which show that Mr. Smith was found guilty of making threatening statements to staff and fighting with other inmates. (Decl. Leroy Kirkegard, Doc. 43-7 at ¶¶ 15-20.)

Because Mr. Smith agreed that summary judgment should be granted to Defendants Kirkegard and Clark (Pl.'s St. of Disp. Facts, Doc. 51 at 6), those motions should be granted, and only the motions for summary judgment regarding Defendants Postma and Officer August remain at issue.[2]

## ANALYSIS

### A. Standard

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories,

---

[2] The Court's use of "Defendants" in the remainder of this opinion refers only to Defendants Postma and Officer August.

and admissions on file, together with the affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file "specific facts showing that there is a genuine issue for trial." *Id*. at 324. In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[T]he district court may not weigh the evidence to determine its truth; the court's role is limited to determining whether there is a genuine issue for trial." *Malik v. Brown*, 16 F.3d 330, 334-35 (9th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249) supplemented, 65 F.3d 148 (9th Cir. 1995).

**B.    Discussion**

Mr. Smith alleges Defendants violated his First Amendment rights through their refusal to heat his Ramadan meals, Officer August's use of racial slurs and refusal to release Mr. Smith for his morning meal on July 8, Sgt. Postma's search of his meal without gloves, and the early termination of his Ramadan meals. To establish a violation of the protections provided under the Free Exercise Clause of

the First Amendment, Mr. Smith must show that Defendants' actions substantially burdened his observation of his sincerely held religious belief. *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *Shakur*, 514 F.3d at 884–85. Defendants raise two issues in their motions for summary judgment; first, whether Mr. Smith's religious beliefs are sincerely held, and second, whether the service of cold food, the use of racial slurs and threats, the denial of a morning meal on July 8, the search of Mr. Smith's meals, and the eventual discontinuation of meals constituted a violation of Mr. Smith's constitutional rights.

1. **Sincerely Held Religious Belief**

Although incarcerated, inmates are not denied all constitutional protections. *Turner v. Safley*, 482 U.S. 78, 84 (1987); *Malik*, 16 F.3d at 332-33. Among those retained rights are the protections provided by the Free Exercise Clause of the First Amendment. *Malik*, 16 F.3d at 332-33 (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)). For a religious claim to obtain protection, the belief must be sincerely held and be rooted in religious belief. *Id.* Defendants do not contend that the observance of Ramadan was not rooted in religious belief, but rather that Mr. Smith's belief was not sincerely held. Defendants assert that Mr. Smith's disciplinary record and the single incident where Mr. Smith allegedly consumed bacon establish that his belief in Islam is insincere. Defendants' position is

8

unpersuasive.

Consistent compliance with religious tenants is not required as "[a] 'use it or lose it' approach to religious exercise does not square with the Constitution." *Id*. Likewise, a practitioner's failure to strictly adhere to every tenet of a religion does not make his belief insincere. *Reed v. Faulkner*, 842 F.2d 960, 963 (7th Cir. 1988). As the Seventh Circuit has aptly noted:

> Some religions place unrealistic demands on their adherents; others cater especially to the weak of will. It would be bizarre for prisons to undertake in effect to promote strict orthodoxy, by forfeiting the religious rights of any inmate observed backsliding, thus placing guards and fellow inmates in the role of religious police.

*Id*.; s*ee also White v. Linderman*, 2013 WL 4496364, at *5 (D. Ariz. Aug. 22, 2013) ("[E]ven if Plaintiff did consume non-kosher items, this establishes that he is imperfect in his religious practice. But this 'backsliding' or nonobservance of a religious practice is not sufficient to establish as a matter of law that Plaintiff is insincere in his religious beliefs."); *Curry v. Cal. Dep't of Corrections*, 2013 WL 75769, at *7 (N.D. Cal. Jan. 4, 2013) ("Although Curry's purchases of many foods inconsistent with the Kemetic diet likely would make a strong impact on a jury, it cannot be said as a matter of law that his canteen activities show that his religious beliefs were insincere.") aff'd sub nom. *Curry v. Cal. Dep't of Corrections & Rehab.*, 616 Fed. Appx. 265 (9th Cir. 2015) (unpublished).

In regards to the alleged consumption of a bacon cheeseburger, Mr. Smith disputes ever eating the bacon. Further, this incident took place almost a year after the 2014 Ramadan observance, which makes it irrelevant to the determination of whether Mr. Smith sincerely held his beliefs during Ramadan in 2014.

This leaves only Mr. Smith's disciplinary record as proof of the sincerity of his belief. Although the disciplinary record is undisputed, it does not support the proposition that Mr. Smith's religious belief was insincere. The issue is not whether Mr. Smith sincerely believed in every tenant of Islam, but rather whether his observance of Ramadan was a sincerely held belief. *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). While Mr. Smith's record of fighting may undercut his contention that his belief in Islam is sincerely held, the evidence establishes that he attempted to observe Ramadan in 2014. There is no evidence that Mr. Smith broke his fast or deviated from his observance of Ramadan in 2014. To the contrary, the record shows that Mr. Smith had been a practitioner of Islam for nearly twelve years at the time of the 2014 Ramadan. At best, Defendants have shown that the material facts regarding the sincerity of Mr. Smith's general belief in Islam are disputed. Therefore, this issue is inappropriate for summary judgment.

2. **Substantial Burden**

Defendants' arguments focusing on whether each individual action was a

constitutional violation fail to address the proper legal standard. The proper inquiry is whether Defendants' actions substantially burdened Mr. Smith's observation of Ramadan regardless of whether the individual actions were constitutional violations. *See Jones v. Williams*, 791 F.3d 1023, 1033 (9th Cir. 2015) (inquiry was not whether forcing an inmate to cook pork is constitutionally permitted, but rather whether forcing a Muslim inmate to cook pork substantially burdened his sincerely held religious beliefs).

A substantial burden is one that "tends to coerce the individual to forego [his] sincerely held religious beliefs or to engage in conduct that violates those beliefs." *Jones*, 791 F.3d at 1033 (9th Cir. 2015). Further, "[a] substantial burden need not actually force a litigant to change his practices." *Walker v. Beard*, 789 F.3d 1125, 1135 (9th Cir. 2015) cert. denied, 136 S. Ct. 570 (2015). A series of otherwise legitimate punishments for rule violations that puts pressure on an inmate to conform contrary to his religious beliefs substantially burdens an inmate's religious exercise. *See id*. (religious beliefs substantially burdened where inmate "accepted prison discipline rather than the restriction on his religious practice. The punishments he received—a rules violation report and placement in administrative segregation—plainly placed him under pressure to conform."); *Warsoldier v. Woodford*, 418 F.3d 989, 996 (9th Cir. 2005) (religious beliefs

11

substantially burdened where inmate subjected to cell confinement, additional duty hours, loss of phone privileges, expulsion from classes, removal from Inmate Advisory Council, loss of main yard recreation, reduction of monthly draw at prison store, and prohibition from making special purchases for refusal to comply with hair length regulations that violated his religious beliefs).

As an initial matter, the undisputed evidence establishes that Sgt. McDonald was the officer responsible for the discontinuation of Mr. Smith's Ramadan meals. Because Sgt. McDonald is not a defendant in this action, and because Mr. Smith has not established that any of the named defendants contributed to Sgt. McDonald's discontinuation of Mr. Smith's Ramadan meals, this issue does not foreclose or inform the summary judgment determination.

In regards to the remaining issues, Defendants have focused on whether each action, individually, was a violation of Mr. Smith's constitutional rights. However, as discussed above, the inquiry is whether these actions substantially burdened Mr. Smith's observance of Ramadan. Each incident is not a separate and unrelated act, but a series of pressure points that may have worked together to coerce Mr. Smith to forego his observance of Ramadan and thus impose a substantial burden on his religious beliefs.

It is undisputed that Mr. Smith was served only cold meals for the majority

of Ramadan. Although the service of cold meals is not, in itself, a constitutional violation, *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation.") (internal quotation marks omitted), it may establish that Mr. Smith's observance of Ramadan was substantially burdened when considered in conjunction with other actions, such as racial slurs, disciplinary action, and the search of his meals without gloves. While Defendants contend these events did not occur, that is disputed.

Defendants also assert that Mr. Smith's position is inconsistent as he admitted that the search of his meals did not violate his constitutional rights. However, Mr. Smith's admission was qualified, and the request for admission was ambiguous. Mr. Smith clearly does not take issue with the searching of his meals in general, nor does he claim that it is against Islamic law. Rather, Mr. Smith takes issue with the search of his meals without gloves. The request for admission only asked whether the searching of his meals violated his rights and did not state that the search was performed without gloves. Further, Defendants still contend that the search was conducted with gloves. Given Defendants' position regarding the use of gloves, the ambiguous language of the request for admission, and Mr. Smith's qualified admissions, it is clear that Mr. Smith did not admit that a search

of his meals without gloves did not violate his constitutional rights.

The material facts of this case are highly disputed and supported by conflicting evidence. The individual actions considered together could establish that Mr. Smith's observance of Ramadan was substantially burdened. Like the series of punishments in *Walker*, Mr. Smith was punished with a rule violation and sanctioned eleven dollars, served cold food in defiance of MSP policy, and forced to choose between obeying his religious laws and eating food touched by the unclean hands of a non-believer. Although these punishments do not quite rise to the level of those in *Walker* or *Warsoldier*, they did put Mr. Smith under pressure to conform contrary to his sincerely held religious beliefs. Moreover, Defendants August and Postma have failed to argue, let alone establish, that these actions imposed no substantial burden upon Mr. Smith's religious observance of Ramadan. Therefore, summary judgment is improper on this issue as well.

## Conclusion

Construing the facts in the light most favorable to Mr. Smith, Defendants Postma and August are not entitled to summary judgment. However, as mentioned above, Defendants Kirkegard and Clark are entitled to summary judgment and Mr. Smith's claims for First Amendment violations against them should be dismissed.

Based upon the foregoing, the Court issues the following:

14

## RECOMMENDATIONS

1. Defendant August's Motion for Summary Judgment (Doc. 35) should be **DENIED**.

2. Defendant Clark's Motion for Summary Judgment (Doc. 37) should be **GRANTED**.

3. Defendant Kirkegard's Motion for Summary Judgment (Doc. 39) should be **GRANTED**.

4. Defendant Postma's Motion for Summary Judgment (Doc. 41) should be **DENIED**.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[3] 28 U.S.C. § 636. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a) should not be filed

---

[3] As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d). Therefore, three (3) days are added after the period would otherwise expire.

until entry of the District Court's final judgment.

DATED this 3rd day of May, 2016.


/s/ John Johnston
John Johnston
United States Magistrate Judge